IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 3:16-cr-00256-AN |
| v. | |
| ASHLEY WADE SICLOVAN, | OPINION AND ORDER |
| Defendant. | |

Defendant Ashley Wade Siclovan moves the Court to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  For the reasons set forth below, the motion is GRANTED.

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  The "compassionate release" exception, however, permits a court to modify a term of imprisonment when the following conditions are met: (1) the defendant has fully exhausted all administrative remedies; (2) "extraordinary and compelling reasons warrant" a sentence reduction; (3) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission[;]" and (4) the reduction is warranted after considering the applicable factors set forth in 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A).  A court must find that a defendant satisfies all requirements before granting a motion for compassionate release and may deny a motion for compassionate release if any requirements are not satisfied.  *United States v. Wright*, 46 F.4th 938, 946 (9th Cir. 2022).

A.      **Administrative Exhaustion**

Section 3582(c)(1)(A) requires a defendant to fully exhaust all available administrative remedies before they may seek relief before a court.  The administrative exhaustion requirement is met when:

"(1) the Director of the BOP has filed the motion on the inmate's behalf, or (2) the inmate has requested that the BOP make such a motion and either (a) the inmate has 'fully

exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the [inmate]'s behalf,' or (b) 30 days have elapsed since the 'warden of the [inmate]'s facility' received a compassionate-release request from the inmate."

*United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) (alterations in original).

The exhaustion requirement is a mandatory-claim processing rule, not a jurisdictional bar, and as such, the requirement is waivable. *Id.* at 1282. However, when the administrative exhaustion requirement is properly raised by the government, a court must enforce the requirement. *Id.*

**B.    Extraordinary and Compelling Reasons**

The Federal Sentencing Guidelines (the "Guidelines") provide criteria for determining whether extraordinary and compelling reasons exist justifying compassionate release. In determining whether compassionate release is warranted, this Court must consider the following criteria:

"Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

"(1) Medical Circumstances of the Defendant.--

"(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

"(B) The defendant is--

"(i) suffering from a serious physical or medical condition,

"(ii) suffering from a serious functional or cognitive impairment, or

"(iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

"(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

"(D) The defendant presents the following circumstances--

"(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

"(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical

complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

"(iii) such risk cannot be adequately mitigated in a timely manner.

"(2) Age of the Defendant.--The defendant

"(A) is at least 65 years old;

"(B) is experiencing a serious deterioration in physical or mental health because of the aging process; and

"(C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

"(3) Family Circumstances of the Defendant.--

"(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

"(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

"(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

"(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

"(4) Victim of Abuse.--The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

"(A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. 2246(2) (including the conduct described in 18 U.S.C. 2246(2)(D) regardless of the age of the victim); or

"(B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to § 1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

"For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

"(5) Other Reasons.--The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

"(6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made

3

> retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."

U.S.S.G. § 1B1.13(b).

The Ninth Circuit previously held that "the [former] version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant" and as a result, "[t]he Sentencing Commission's statements in [former] U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). The Ninth Circuit's holding in *Aruda* reflected in large part the timing of the policy statement, which predated a defendant's ability to bring a motion under § 3582. On November 1, 2023, however, the Sentencing Commission amended U.S.S.G. § 1B1.13, which now reads:

> "Upon motion of the Director of the Bureau of Prisons *or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A)*" the court may reduce a term of imprisonment if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that . . . extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and "the reduction is consistent with this policy statement."

(Emphasis added).

Other courts within the Ninth Circuit, applying the reasoning in *Aruda*, have found this iteration of U.S.S.G. § 1B1.13 to be an "applicable policy statement" for motions filed by a defendant, which as a result, binds district courts' analysis. *See United States v. Brugnara*, No. CR 14-00306 WHA, 2024 WL 332867, at *2 (N.D. Cal. Jan. 28, 2024) (finding U.S.S.G. § 1B1.13 as an applicable policy statement, binding the court's analysis as to defendant's motion); *United States v. Garcia Nava*, No. 19-CR-2034-GPC, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024) (same); *see also United States v. Cunningham*, No. CR 12-60-GF-BMM, 2024 WL 50908, at *2 (D. Mont. Jan. 4, 2024) (same); *United States v. Brown*, No. CR16-0259JLR, 2023 WL 8650290, at *3 (W.D. Wash. Dec. 14, 2023) (same).

However, the Ninth Circuit has not yet spoken on the issue, and cited *Aruda* favorably in a post November 1, 2023 opinion. *See United States v. Holmes*, No. 23-420, 2023 WL 8108461 (9th Cir.

Nov. 22, 2023) ("[T]he court properly treated § 1B1.13 as 'persuasive authority.'") (citing and quoting *Aruda*, 993 F.3d at 802, for the proposition that "although § 1B1.13 is not binding, it 'may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant.'").  Thus, because the Ninth Circuit has indicated, and continues to indicate post-amendment, that U.S.S.G. § 1B1.13 is not an "applicable policy statement," this Court will continue to treat § 1B1.13 as persuasive, nonbinding authority.

        The Guidelines permit a court to consider changes in the law, including amendments to the Guidelines, in determining the extent of a sentence reduction, but a change in the law alone "shall not be considered" in determining whether extraordinary and compelling reasons exist.  U.S.S.G. § 1B1.13(c). The Ninth Circuit has held that changes in post-sentencing decisional law, including non-retroactive changes, may be considered when assessing whether extraordinary and compelling circumstances exist. *United States v. Roper*, 72 F.4th 1097, 1103 (9th Cir. 2023); *see Concepcion v. United States*, 597 U.S. 481, 500 (2022) ("[T]he First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.").  Courts in the Ninth Circuit may also consider non-retroactive changes in sentencing law when assessing whether extraordinary and compelling circumstances exist.  *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) ("We now . . . conclude that district courts may consider non-retroactive changes in sentencing law, in combination with other factors particular to the individual defendant, when analyzing extraordinary and compelling reasons[.]").

        Rehabilitation, by itself, is not an extraordinary and compelling circumstance, but may be considered in combination with other circumstances.  U.S.S.G. § 1B1.13(d).

## C.    18 U.S.C. § 3553(a) Factors

        When deciding a motion for compassionate release, a court "must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted 'under the particular circumstances of the case.'"  *Wright*, 46 F.4th at 945 (citation and internal quotation marks omitted).  The factors include, among other things:

(1) the defendant's personal history and characteristics; (2) his sentence relative to the

nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable sentence guidelines; and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants."

*Id.* at 945 n.4 (citing 18 U.S.C. § 3553(a)).

## BACKGROUND

On July 12, 2018, this Court sentenced defendant to 130 months imprisonment, followed by five years of supervised release, for Possession with Intent to Distribute Methamphetamine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii), and Possession with Intent to Distribute Heroin, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  J. & Commitment, ECF [52], at 2-3.

Because defendant was addicted to methamphetamine at the time of his crimes, he requested that the Court provide a recommendation that he receive residential treatment while serving his federal sentence.  Def.'s Mot. to Reduce Sent. ("Def.'s Mot."), ECF [66], at 2; Def.'s Sent. Mem., ECF [49], at 5-6.  On advice of counsel, defendant did not participate in the presentence interview.  Def.'s Mot. 3.  To support his addiction history, defendant provided records from the Washington State Department of Corrections.  *Id.*  This Court, addressing the Bureau of Prisons ("BOP") in its Judgment and Commitment, "strongly recommend[ed] the defendant be afforded drug treatment."  J. & Commitment 2.

After entering prison, defendant has continuously pursued acceptance into the Residential Drug Abuse Program ("RDAP").  Def.'s Mot. 3.  BOP, however, has denied defendant residential treatment on the basis that defendant lacks a documented substance abuse disorder.[1]  *Id.*  After being denied in 2022, defendant then requested that his trial counsel send proof of his severe substance abuse disorders to Federal Correctional Institution ("FCI") Mendota, where he was currently incarcerated at that time.  *Id.* at 4.  Trial counsel sent BOP a psychological evaluation conducted before sentencing that addressed defendant's "lengthy and well-documented history of addiction to controlled substances" and diagnoses for severe opioid related disorder and severe stimulant related disorder.  Decl. of Noel Grefenson, ECF [56], ¶ 2.

---

[1] BOP found defendant ineligible for RDAP in 2020, 2022, and 2023.

Around the same time, defense counsel requested that this Court supplement the presentence report ("PSR") to include documentation supporting defendant's need for residential drug treatment. Def.'s Mot. 4. This Court granted defendant's motion. *See* Order Suppl. PSR, ECF [58]. After reviewing the new assessment and record, BOP once again found defendant ineligible. Def.'s Mot. 4-5. Defendant, unsuccessfully, sought administrative review of BOP's ineligibility determination. *Id.* at 5. Defendant no longer has enough time remaining on his sentence to participate in RDAP. *Id.*

Defendant is currently incarcerated at FCI Victorville, with a projected release date of December 12, 2025. *Id.* at 3. Defendant moves the Court for a sentence of time served, with conditions of supervised release including up to 120 days at the Northwest Regional Re-entry Center ("NWRRC") and a requirement that he be assessed for dual diagnosis residential treatment. *Id.* at 17.

## DISCUSSION

### A.     Administrative Exhaustion

The Court finds, and the government concedes, that defendant has satisfied administrative exhaustion. *See* Gov't Resp. to Mot. to Reduce Sent. ("Gov't Resp."), ECF [63], at 3; *see also* Def.'s Mot. 11.

### B.     Extraordinary and Compelling Reasons

Defendant cites his need for mental health treatment as an extraordinary and compelling circumstance. Def.'s Mot. 13-16. In particular, defendant argues that his Tourette's syndrome, anxiety, obsessive compulsive disorder, and adjustment disorder are medical conditions requiring long-term or specialized care. *Id.* at 14. Because BOP is not providing proper care for these conditions, defendant argues he is at risk of serious deterioration in health. *Id.*

The government argues that defendant's prison records, including self-reporting to BOP Psychological Services, negate defendant's assertions that he has tried unsuccessfully to access mental health assistance. Gov't Resp. 6. Moreover, the government contends that defendant has failed to give information about what type of mental health assistance he believes he should be getting. *Id.* at 5. For

support, the government points to a 2022 psychological interview where a BOP psychologist noted that defendant was "alert and cooperative" and "denied any current significant mental health symptoms nor was he observed to be in acute distress." *Id.* The government further points to a Special Housing Unit ("SHU") assessment conducted on April 11, 2024, finding that defendant "denied any acute mental health concerns," and that he had "no significant mental health issues." *Id.* at 6-7.

Defendant, however, presents the opinion of Karl E. Mobbs, MD, D. ABPN, who reviewed his BOP medical records. Def.'s Exs., ECF [70], Ex. 7. Dr. Mobbs notes that during defendant's time in BOP custody he has received consistent treatment with one medication, Buspirone, a medication commonly prescribed for anxiety. *Id.* Dr. Mobbs concluded, however, that defendant is a "complex case based on his collective diagnoses and is likely to decline further should his symptoms not be addressed." *Id.* at 1. Dr. Mobbs "delineat[ed] [ ] three diagnoses that are not currently being addressed – *Obsessive Compulsive Disorder*, *Bipolar* and *Tourette's* disorders." *Id.* Dr. Mobbs explained the standard of treatment for each disorder and how BOP's care deviated from that standard:

> "The standard of treatment for obsessive compulsive disorder [("OCD")] includes an antidepressant with an anxiety indication. The standard of treatment for bipolar disorder, or symptoms within the bipolar spectrum, is a mood stabilizer. He was briefly proscribed Topiramate [*note dated 8/1/2023*], but his blood level was subtherapeutic. For Tourette's disorder, dopamine blockade utilizing an antipsychotic is the routine treatment. He was prescribed Risperdal [*note dated 3/27/23*] but it was abruptly stopped due to an allergic reaction. In addition, therapeutic interventions would also be viable for both OCD and Tourette's. There is little indication of the specific type of OCD that Mr. Siclovan suffers from, however therapy can help a great deal. In terms of Tourette's therapy, habit reversal therapy or comprehensive behavioral intervention would both be appropriate interventions."

*Id.* Moreover, defendant presents evidence that he consistently expressed need for mental health treatment to BOP on many occasions over the last ninety-nine months.[2] Def.'s Reply to Mot. to Reduce Sent. ("Def.'s

---

[2] In a September 2022 General Administrative Note encounter performed at the SHU, a registered nurse noted that defendant "submitted a request to medical, stating I need Remeron (mirtazapine) with busPIRone 10 MG, this is my 7th attempt." Def.'s Exs., Ex. 10, at 1. In a November 2022 Chronic Care Clinic encounter performed at Health Services, the doctor described defendant seeking medication for anxiety and depression. *Id.*, Ex. 11. In that encounter, the doctor noted that defendant brought a stack of papers for the provider to review, but defendant "used foul language and was escorted form [*sic*] the exam room." *Id.* In a March 2023 Physician Evaluation encounter performed at health services, the doctor described defendant's Tourette's symptoms and how these symptoms negatively impacted other inmates. *Id.*, Ex. 12, at 1. The doctor, after examining defendant, found him to appear distressed. *Id.* at 2. In an April 2023 Inmate Request to Staff, defendant sought dual diagnosis treatment for drug addiction and mental health. *Id.*,

Reply"), ECF [76], at 8.

        In addition to the absence of mental health treatment, defendant cites BOP's wrongful determination of eligibility in RDAP as an extraordinary and compelling circumstance. Def.'s Mot. 12. If defendant had been properly afforded RDAP, he would *today* be ten months from his release date and immediately eligible for prerelease placement at a halfway house through the Second Chance Act. *Id.* In turn, because defendant was unable to participate in RDAP, he argues that he will serve twelve months longer in prison than anticipated.

        The government, however, argues that this Court "did not order or even recommend that defendant be admitted specifically into RDAP, only that he be afforded drug treatment programs that are available." Gov't Resp. 5. The government points to this Court's order granting defendant's motion to amend his PSR, which recommends "that the Federal Bureau of Prisons afford defendant drug treatment pursuant to 18 U.S.C. § 3261 and any other treatment programs that may become available." Order Suppl. PSR. The government argues that BOP has fulfilled this recommendation as defendant has participated and completed at least two substance abuse programs while in prison. Gov't Resp. 4-5.

        The government is misguided. At the time of sentencing, Judge Mosman, the sentencing judge, "recommend[ed] strongly that the defendant be allowed to participate in the [BOP's] residential drug and alcohol program." Tr. of Proceedings, ECF [59], at 7. Defense counsel attempted to confirm that the records attached to defendant's sentencing memorandum demonstrated a history of substance abuse, to which Judge Mosman responded:

> "I don't know what I can do other than to say certainly on the record that I reviewed those materials and they form a significant reason – the main reason for my recommendation, which I don't make idly. I make it because it's very clear from what you've submitted with your sentencing materials that [defendant] suffers from a severe drug addiction and needs help to overcome it. I'm confident the [BOP] will take that into account."

*Id.* at 8. Even were this evidence unconvincing, defendant's motion to amend the PSR, granted by this

---

Ex. 18, at 1.

Court, shows intent to remove procedural barriers to defendant's participation in RDAP.

BOP's failure to provide adequate drug and mental health treatment persuades the Court that extraordinary and compelling reasons to reduce defendant's sentence exist. *See* U.S.S.G. § 1B1.13 ("Extraordinary and compelling reasons exist" when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together . . . are similar in gravity" to the enumerated examples.). First, BOP has failed to provide defendant with specialized treatment for his complex mental health conditions, despite defendant's continuous efforts to gain access to that care, which places defendant at risk of serious health deterioration. Second, the Court emphasized at the time of sentencing how critically important it was for defendant to have access to RDAP, further evidenced by the Court's granting of defendant's motion to amend the PSR. Other courts have found that a defendant's pre-existing medical conditions, combined with BOP's failure to provide addiction support, constitute extraordinary and compelling reasons to grant a motion for compassion release. *See United States v. Woodson*, No. 20-cr-00218-SI-1, 2022 WL 4296070, at *4 (N.D. Cal. Sep. 15, 2022) (collecting cases). For these reasons, the Court concludes that defendant met his burden to show extraordinary and compelling reasons warranting his release.

## C.    18 U.S.C. § 3553(a) Factors

In exercising discretion under the statute, a sentencing court is required to consider the sentencing factors set out in 18 U.S.C. § 3553(a). Thus, an eligible defendant may be denied based on, *inter alia*, his criminal history and the seriousness of his crime(s). The nature and circumstances of defendant's underlying crime are undeniably serious: he was convicted of Possession with Intent to Distribute Methamphetamine and Possession with Intent to Distribute Heroin. Further, defendant has a

significant criminal history,[3] a history of violations while on supervised release,[4] and a history of disciplinary infractions while incarcerated.[5]  Gov't Resp. 8.

While defendant's crimes and lengthy criminal history raise concerns, reduction is warranted under § 3553(a).  Defendant has served a substantial sentence.  He has served over seven years in conditions that, as discussed above, failed to adequately provide substance abuse and mental health treatment.  The COVID-19 pandemic, moreover, exacerbated the harshness of defendant's time in custody, more so than the Court originally anticipated at the time of his sentencing.  A sentence of time served, with conditions, would therefore reflect the nature and circumstances of his offense as well as the offense's seriousness.  Further, such a sentence avoids unwarranted sentence disparities among defendants with similar records of substance abuse who have been found guilty of similar conduct.  Finally, without access to the rehabilitation services contemplated by the Court, it appears his incarceration is no longer serving one of its intended purposes and has become increasingly punitive.

Given defendant's lengthy incarceration for the entirety of the pandemic and inability to access vital substance abuse and mental health treatment, the Court finds that a sentence of time served, with conditions of supervised release including up to 120 days at the NWRRC[6] and a requirement that he be assessed for dual diagnosis residential treatment, is warranted under the § 3553(a) sentencing factors.

## CONCLUSION

---

[3] Defendant has prior convictions, spanning from 1991 to 2015, for Theft, Possession with Intent to Manufacture and Distribute Heroin, Attempt to Elude, Manufacture/Delivery of Methamphetamine with a Firearm, Possession with Intent to Deliver Methamphetamine, Malicious Mischief, Identity Theft, Possession of a Controlled Substance, Fleeing or Attempting to Elude Police, Reckless Endangerment, Unlawful Delivery of Heroin, Identity Theft, Felon in Possession of a Weapon, and Interfering with an Officer.  Gov't Resp. 8.

[4] Defendant has several instances of probation violations and of revocation of probation or supervised release. Namely, defendant had multiple probation violations in 1995, 1997, 2000, and had his probation revoked altogether in both 2004 and 2005.  *Id.*  Further, defendant was on post-prison supervision at the time of the offenses in this case. *Id.*

[5] During his current sentence, defendant was sanctioned for misusing his medication in 2017, possession of drugs or alcohol in 2020, fighting with another inmate in 2021, refusing to obey an order in 2022, and assault in 2023.  *Id.*

[6] Probation has confirmed that defendant is releasable to the NWRRC upon his release from prison.  The Federal Public Defender's Office will assist in expediting any necessary evaluations and coordinating placement in inpatient treatment or other supportive services if deemed necessary.  Def.'s Mot. 17.

Accordingly, defendant's Motion to Reduce Sentence, ECF [66], is GRANTED. Defendant's sentence of imprisonment is reduced to time served.  As part of his supervised release, defendant must reside at the NWRRC for not more than 120 days and must be assessed for dual diagnosis residential treatment.

IT IS SO ORDERED.

DATED this 11th day of July, 2024.

Adrienne Nelson
United States District Judge